CHARLES KING, APPELLANT, *vs.* JOSIAS THOMPSON AND OTHERS, HEIRS AT LAW OF GEORGE KING, DECEASED; APPELLEES.

A bill was filed claiming a specific performance of an alleged contract to convey a house and lot in Georgetown, for the benefit of the wife of the complainant, the complainant having expended a large sum of money in improving the property, in the expectation that it would be conveyed as required by the bill.. The Court not considering that sufficient evidence of an agreement to convey the property was given, ordered that the property should be sold, and out of the proceeds that th advances made by the complainant should be repaid. The property sold for a sum far less than the amount expended. Held that the balance unpaid after the sale, was not a debt due by the estate of the father of the wife, and could not be claimed of his representatives.

ON appeal for the Circuit Court of the United States of the District of Columbia, for the county of Washington.

In December, 1822, the appellant filed in the Circuit Court, a creditor's bill in the usual form, against the appellees, praying for the sale of the real estate of George King, deceased, in aid of his personal estate. It appeared that George King had died intestate, and insolvent, in 1820; and with the assent of the defendants a decree of sale of his real estate was made in January, 1823. Under this decree sales were made, reported, and confirmed; and in March, 1831, a final sale of all the real estate was made except a house and lot on Civil alley in Georgetown, which sale, on the claim of Josias Thompson and wife, was set aside in April, 1831. As the sales were made, audits of the accounts of the estate and the claims were made from March, 1827, to March, 1836. On the last report of the auditor coming before the Court, Alexander Caldwell, administrator of Josias Thompson, who had become deceased, exhibited to the Circuit Court a claim against George King for a dividend out of the assets of his estate; and on his motion the auditor's report was recommitted.

The record made the case of George King's heirs and others, appellants, *vs.* Josias Thompson and wife, 9 Peters, 204, a part of this case. Josias Thompson and wife, in the case referred to, had claimed of the heirs of George King, that the house and lot on Civil alley in Georgetown should be conveyed to them, alleging that an agreement to that effect had been made with them in his lifetime by George King, Josias Thompson having married the daughter of George King; and in consideration of this agreement, Josias Thompson had laid out four thousand dollars in buildings and improvements on the lot. The Court not being satisfied upon the evidence that a decree for the conveyance of the property should be made, ordered that a sale of the property should be made, and that the proceeds should be first applied to repay to Josias Thompson the sum of four thousand dollars laid out on the same, and that the balance should be paid over for the benefit of the creditors of George King.

Under this decree the property was sold, and it produced the sum

Charles King *vs.* Josias Thompson et al.]

of eight hundred and twenty-seven dollars, leaving of the sum expended by Josias Thompson, three thousand one hundred and seventy-three dollars, unpaid.

In April, 1837, the administrator of Josias Thompson claimed from the estate of George King a dividend, on the sum of four thousand dollars, the amount laid out on the house and lot, being two thousand six hundred and twenty-six dollars, less the sum of eight hundred and twenty-seven dollars, the proceeds of the house and lot.

This claim was made on the allegation that Josias Thompson was a creditor of George King to the amount of four thousand dollars, by the expenditure of that sum on the house and lot; and that he was entitled to come in and have, on that amount, an equal dividend with the other creditors of the estate of George King, deducting the proceeds of the property in Georgetown.

The Circuit Court made a decree allowing to the administrator of Josias Thompson the amount claimed by him; and the defendants prosecuted this appeal.

The case was argued by Mr. Clement Cox for the appellant, and by Coxe for the appellees.

Mr. Cox for the appellant insisted:

1. That the decree in 9 Peter's Rep. 204, does not operate as an estoppal of the exceptions, the issues in this case being different.—1 Starkie on Evidence, 202; Collinson *vs.* Owens, 6 Gill; and Johns. 4. 11.

2. That otherwise the exceptions in the Circuit Court were well taken, and ought to have been allowed. He cites, in support of the 1st exception taken below, 9 Peter's Rep. 204; Briscoe *vs.* King, Cro. Jas. 281: and in support of 3d exception, Strike *vs.* M'Donald and Son, 2 Har. and Gill, 181; Harwood *vs.* Rawling's Heirs, 4 Har. and John. 126; Duvall *vs.* Green, Ib. 270.

As to the first point. The parties in this case are different from those before this Court in the case in 9 Peters. These are creditors of George King; and as that was a proceeding for a specific performance of an alleged contract with George King, to which these creditors could not be parties, the decree of the Court could not be an estoppal.

In that case no claim of indebtedness was raised or presented against the estate of George King. It was commenced and prosecuted on the allegation that the property on which the money had been expended, had been promised to the wife of Josias Thompson, the daughter of George King; and its sole purpose was to obtain a conveyance of the property.

There was no contract made with George King, upon which the money was expended by Josias Thompson, for the benefit of George King; and this Court will not see in the case any thing to found a contract of this nature. The whole object of the proceeding in the case in 9 Peters has been obtained. The complainant in that case

17

has drained the whole of the proceeds of the sale of the house and lot.

The claim of Josias Thompson was complete, such as it was at the death of George King in 1820; and until 1837 no assertion is made by Josias Thompson or by any one for him, that the estate of George King was indebted to him. In his lifetime, Josias Thompson made no claim; it was left to his administrator to present and assert it. It is at an end, by force of the statute of limitations.

A mortgage does not imply a personal obligation for the payment of any portion of the debt which the property mortgaged may not produce by a sale. The saving in a mortgage is for the benefit of the mortgagor, Briscoe *vs.* King, Cro. Jas. 281.

Coxe for the appellees contended that the decree of the Circuit Court was right. It was founded on the report of the auditor, who it is to be presumed had full evidence of the facts on which the report is founded.

The lien on the house and lot for advances made by Josias Thompson, was established by the decree of the Court in the case in 9 Peters. The balance, beyond what the house and lot would produce by a sale, was a debt due by the estate of George King. The claim of the administrator of Josias Thompson is in full accordance with the principles established by this Court, in its decision in 9 Peters.

Mr. Justice CATRON delivered the opinion of the Court.

In 1812, Thompson married the daughter of King, who, being a man of considerable estate, offered to give Thompson a house and lot in Georgetown, then in a dilapidated state, if Thompson would repair the premises so as to make them a comfortable residence; King saying, he intended the property for his daughter, the wife of Thompson.

Thompson accepted the offer, went into possession, and expended in repairs and improvements, four thousand dollars.

About 1816, Thompson claimed to have the property conveyed to him by King, who refused; but offered to vest the title in trust for Thompson's wife. Thompson made several alterative propositions; one amongst others, that the house and lot should be valued as of the date when it was put into his possession; and that he would pay the amount over to King, and take a title; which proposition the latter accepted: or, offered to convey a part of the lot, including the house, to Thompson, and another part to Thompson's wife. Under these circumstances, Thompson continued to occupy the premises for a time, and afterwards removed from, and rented them; King setting up no claim to have the property returned to him.

In 1820, he died, and the title descended on his heirs. King, at his death, was largely indebted, say 36,000 dollars, and much over the means of payment; his creditors filed a bill to have satisfaction

of their demands, out of the real as well as personal estate: and the trustee appointed by the Circuit Court to sell the property, amongst other lands, sold that claimed by Thompson. The latter filed his bill to avoid the sale, and for a specific performance against King's heirs, the trustees of the creditors, &c.; the record in which cause, as reported in 9 Peters' Reports, is, by the exceptions and an agreement, made a part of this proceeding.

The creditors denied the existence of the title set up by Thompson; claiming the house and lot as subject to King's debts, and went to issue. The Court below decreed specific performance, from which the defendants appealed to this Court, where the decree below was reversed. But Thompson having an alternative prayer in his bill, claiming priority of the general creditors of King, in the form of a lien on the property, to the value of the improvements he had put upon it; this Court held, that although there was not sufficient evidence to authorize a decree for title, still Thompson had, by the rules of a Court of Equity, a lien for the money expended on the improvements: and the cause was remanded with a mandate that the property should be advertised and sold, and the proceeds of the sale be applied: first, to the satisfaction of the money expended by Thompson in making the improvements; "and the balance, if any, to be paid over for the benefit of the creditors of King."

The property was accordingly sold, and brought little more than 800 dollars, leaving upwards of 3000 dollars unsatisfied.

The trustee of the creditors of King's estate, from time to time, made various sales and reports; and at April term, 1837, reported that Alexander Caldwell, the administrator of Thompson, (then deceased,) had presented as a debt due from the estate, the balance not refunded to Thompson by the sale of the house and lot. The other creditors resisted the claim, as forming no demand on the estate; and insisted Thompson's remedy extended only to the property improved and fixed with the lien, by the decree of the Supreme Court. But the Circuit Court overruled the exception, and adjudged that Thompson's administrator should come in for an equal dividend with the general creditors.

From this order the creditors appealed. Thompson, by his bill to subject the house and lot, claimed a priority of lien, and had it allowed to him, in exclusion of the general creditors; he proceeded against the thing, and did not set up any personal demand extending beyond the lien, against the other estate of King: and we are clearly of opinion none exists. And therefore order, that so much of the proceeding in the Circuit Court, as allowed the administrator of Thompson to come in with the general creditors of King, to receive a dividend founded on said claim, be reversed; and that the cause be remanded for further proceedings.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States, for the District of Co-

[Charles King *vs.* Josias Thompson et al.]

lumbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof, it is adjudged and decreed by this Court, that so much of the decree of the said Circuit Court in this cause, as allowed the administrator of Thompson to come in with the general creditors of King, to receive a dividend founded on his claim, be, and the same is hereby, reversed, with costs; and that this cause be, and the same is hereby, remanded to the said Circuit Court, for further proceedings to be had therein, in conformity to the opinion of this Court.